S. MASON *against* ROOSEVELT and others.

Where an *administratrix*, a few days after the death of the intestate, committed the entire possession and management of the estate to *R.*, to whom she gave a power of attorney to collect debts, &c. *Held*, that *R.*, who admitted that he accepted the agency from motives of benevolence, as a friend and relation of the family, was not entitled to *commissions*, on the moneys received and paid by him, nor any allowance for his services in relation to the estate.

Such an agent, however, is not chargeable with *interest* on moneys belonging to the estate, received by him, under the directions of the administratrix.

*Aliter*, where he assumes to act as guardian to the infant heirs, and receives the rents and profits of the real estate.

Whether on a bill filed by a creditor for an account, a master, on an order of reference to him, to take the account, can charge the debtor with *interest*, except on debts which would carry interest in a Court of law? *Quere.*

On a bill, filed by the heirs of the intestate against *R.* agent of the administratrix, for an account, the testimony of the administratrix, who had been released by the plaintiff, is not, of itself, sufficient against the answer of the defendant.

It *seems*, that a release of the administratrix, as principal, in such case, would be a discharge also of the defendant as her agent.

THIS was a *rehearing* on the *petition*, in the matter of the heirs of *Samuel Nicoll,* deceased, to be let in to prove their debts against the estate of *C. C. Roosevelt*, deceased, on taking the account before the master, in the above cause, on exceptions taken to the master's report.

The bill, in this cause, was filed on the 10th of *December*, 1817, by the plaintiff, for herself, as creditor, and such other creditors of *C. C. Roosevelt,* deceased, as should come in, &c. against the executors, heirs and devisees of *C. C. R.*, for an account of the personal estate, and for a sale of his estate, and payment of their demands.

An order of reference to a master to take and state an

account of the real and personal estate of the intestate, and of the debts due, was entered on the 30th of *June*, 1818; and the master made his report on the 20th of *October*, 1818.

The petitioners, on the 30th of *November*, 1818, obtained an order, on an *ex parte* hearing, admitting them, as parties, to appear before the master, and prove their accounts and demands against the estate of *C. C. R.*

It appeared, that prior to this order, the heirs of *Nicoll* had, on the 4th of *April*, 1812, filed their bill against *C. C. R.* for an account of the rents and profits of the real estate of *N.*, and the proceeds of certain parts of the real and personal estate, which had come to his hands, as guardian of the heirs, or otherwise, in their right and behalf, and in right of the widow of *N.*, who had been appointed administratrix of the estate of her husband, and who afterwards interma rrie with *P R. Ludlow;* and she and her husband were made defendants. The heirs of *N.*, in their bill, charged, that the widow of *N.* administered on his estate, the 6th of *February*, 1796, four days after his decease, and then committed the entire possession and management thereof to *C. C. R.*, and gave him a power of attorney for that purpose. That before *May*, 1796, *C. C. R.* became guardian to the infant children of the intestate, and in that character, received large sums of money out of the rents and profits, and from sales of parts of the real estate. That on the 12th of *October*, 1796, he applied to the Court of Probate, for a sale of the real estate of the intestate, and under an order of that Court, sold large parcels of the real estate. That the widow and administratrix, having confided to him the whole management of the estate, broke up housekeeping, in *May*, 1796; and afterwards, in *December*, 1803, married *P. R. Ludlow*,

The bill *prayed* for a discovery, and account, &c.

*C. C. R.*, on the 27th of *August*, 1812, filed his answer

to·that. bill, and admitted, that he was a friend and relative of the family of *N*, and undertook the agency of the estate as charged in the bill, at the request of the widow and administratrix, from motives of humanity and benevolence, and with reluctance. That on the 17th of *May*, 1796, the administratrix executed a power of attorney to him, and three others, jointly and severally, to sue for and collect the debts due to the estate. That he was never appointed guardian of the children of *N.*, and never acted as such. That at the request of the administratrix, and as her attorney in fact, and friend of the family, he received and paid moneys, as set forth in a schedule annexed to his answer. That he took possession of certain title deeds, at the request of the administratrix, and subject to her control, and which he set forth in his answer. That under the power of attorney, he received the rents and profits of the real estate, and part of the proceeds of the sale of the real and personal estate; a true account of which receipts, and of his disbursements, &c. and of the balance in his hands, was contained in the schedule annexed. He denied that he ever applied to the Court of Probates, for an order to sell the real estate, or that he sold any part thereof, except as stated in the schedule to which he referred. He admitted, that the administratrix had obtained from the Court of Probates an order for such sale, and did sell part of the real estate; but his memory being impaired by disease, he could not answer more fully. He admitted, that in 1796, he received from *Elbert R.*, 2,125 dollars; and in 1810, he received from *E. R.* 4,025 dollars, and 3,000 dollars from *G. W. Lent*, for sales of the real estate, by direction of the administratrix. That he disposed of these sums according to the directions of the administratrix; and the schedule annexed contained a true account of all his concerns with the estate of *N.* That he kept no regular books of accounts of his transactions relative to the estate;

and acted merely as agent of the administratrix, and appropriated the moneys received by him, according to her directions, except as to the balance remaining in hand. That he had always been ready to account, and to pay the balance.

No replication was filed to this answer, and *C. C. R.* died about eighteen months after, and no further proceedings after his answer, appeared in the cause.

It appeared also, that on the 5th of *July*, 1816, the heirs of *N.* filed a new original bill against the executors and legal representatives of *C. C. R.*, to which the defendants pleaded the fact of the former suit in bar; and the plea was sustained by the judgment of the Court upon it, the 14th of *October*, 1817.*

\* Vide 8 *Johns. Ch. Rep.* 60.

On the 11th of *December*, 1818, the plaintiff and defendants in the present suit, and the heirs of *Nicoll*, under the order of the 30th of *November*, 1818, appeared by their respective counsel, before the master, to whom the reference had been made, to take the account. The counsel for the plaintiff, and for the representatives of *C. C. R.*, objected to the heirs of *Nicoll* proceeding to take the account, on the ground, that after the decision of the Court on the plea, in *October*, 1817, they should have filed their *bill of revivor* against the representatives of *C. C. R.*

The counsel for the parties in this suit, and petitioners, then agreed, that the proceedings before the master should be considered as had on a bill of *revivor* of the original suit above mentioned. And it was then insisted, that the petitioners' claim must be confined to the balance, as stated in the schedule annexed to the answer of *C. C. R.* in that suit, unless the petitioners could surcharge and falsify that account; but the master permitted them to proceed, as if no such accounts had been rendered. On the 24th of *November*, 1819, the master filed his report of the amount due to the heirs of *Nicoll.*

1821.

MASON
v.
ROOSEVELT.

The petitioners and the defendants both filed exceptions to the report.

*March* 7th, 1820. After a hearing of the counsel on these exceptions, the Chancellor overruled all the exceptions taken on the part of the petitioners, and the *second* and *third* exceptions taken by the defendants to the report, which were, 2. That *C. C. R.* was entitled to *commissions.* 3. That *C. C. R.* was not chargeable with *interest.*

In *May*, 1821, the defendants, executors of *C. C. R.*, presented a petition for a rehearing, against so much of the decretal order of *March*, 1820, as overruled the *exceptions* taken by them to the master's report; and the Court granted a rehearing.

*November* 10th, 1821. The cause came on to be heard on the exceptions, taken by the defendants to the master's report.

*Boyd* and *T. A. Emmet,* in support of the exceptions, argued:

1. That the answer of *C. C. R.* not having been put in issue by a replication, and no proceedings had in the cause after the same was filed, it was not competent to the heirs of *N.* to open the account, unless *C. C. R.* was to be charged with fraud, or mistake, neither of which was pretended.

2. That if the answer was to be considered as put at issue, then there was no testimony before the master to countervail it.

3. That on proof of a debt on a creditor's bill, *interest* is never allowed, on an *open account*, or on any item of charge, where interest is not reserved; and the following authorities were cited. 1 *Vesey, jun.* 426. 3 *Atk.* 273. 4 *Vesey*, 620. 14 *Vesey*, 509. 2 *Vesey, jun.* 157. 165.

1821.

MASON
v.
ROOSEVELT.

*Dickens*, 139. 308. 428.   1 *Madd. Ch.* 428. 489. 491.   12 *Vesey*, 129.   2 *Atk.* 440. 603.   8 *Vesey*, 48.

4. That *C. C. R.* acted as agent or attorney of the administratrix of Dr. *Nicoll*; and, as such, was only liable for interest in case he had neglected to lay out money according to direction; or refused to account when called upon to account.   3 *Bro. C. C.* 107.   *Prec. in Ch.* 254.   *Eq. Cas. Abr.* 125.

5. To allow the petitioners interest, would be doing injustice to other creditors, as the estate is insolvent, and the petitioners have been guilty of great *laches*.   *Mitf. Pl.* 201. 210.   3 *Atk.* 309.   2 *Atk.* 252.   2 *Vesey*, 239. 1 *Sch.* and *Lef.* 192.

6. That *C. C. R.* was entitled to commissions.   1 *Vesey*, 115.

*D. S. Jones*, contra, contended, 1. That no *commissions* ought to be allowed. It is not pretended, that there was any agreement between *C. C. R.* and the administratrix, for commissions. The administratrix herself, had no right to make such a charge; *a fortiori*, her agent could not be entitled to make it, especially as he put his agency altogether on the ground of friendship and benevolence.

2. As to the *interest*, he contended, that it was a legal and just charge against *C. C. R.* As trustee and guardian, he ought to have kept the monies of the estate separate from his own. It appeared that he neglected to pay off the debts of the estate when he had funds in his hands, and when he knew that those debts carried interest. It would appear from an examination of the accounts, that he had a large balance of money in his hands, from year to year, belonging to the estate, and he is not to be considered in the light of a mere agent or broker. He had the entire management and control of the estate; he acted as a principal, and paid money when, and to whom, he pleased. There is no evidence of

his having paid any debt by direction of the administratrix.

The answer of *C. C. R.* has been shown to be incorrect in many particulars, and has no claim to be considered as conclusive. Though no replication was, in fact, filed, yet the answer must be considered as having been put in issue by the whole course of the proceedings. Such, also, must be the effect of the agreement, that the original suit was to be considered as revived.

THE CHANCELLOR. A rehearing has been granted on the application of the defendants, who are executors of *C. C. Roosevelt*, deceased, against so much of the decretal order of the 7th of *March,* 1820, as overruled the 2d and 3d exceptions taken by these defendants to the master's report.

The 2d exception was, that the master had not credited the estate of *C. C. R.* with *commissions* on the moneys expended by him, on account of the estate of *Nicoll*, or with any other allowance for his agency and services in relation to that estate.

I am entirely satisfied, that under the circumstances of the case, there is no real equity in this claim for commissions. *C. C. R.* admits, in his answer, that he assumed the agency of the estate of Doctor *Nicoll*, at the request of the administratrix, and from motives of humanity and benevolence, as he had been a friend to the intestate, and was connected by marriage with the family. It was a very loose and undefined agency, and Mrs. *Ludlow*, the administratrix, states, in her testimony, that she intended to confide to his discretion the management of the estate, to the extent of her power. He dealt with the funds of the estate very much at his own discretion, and though with honest intentions, yet evidently with a regard to his own convenience. It would be giving too much encouragement

1821.

MASON
v.
ROOSEVELT.

to a lax and officious interference, to allow a commission in this case to the agent of the administratrix, who ought either not to have assumed the trust, or to have executed it herself.

The 3d exception was, that the master had charged the estate of *C. C. Roosevelt* with interest on such items of the petitioner's charge as were allowed by the master, and had credited the estate with interest on such items of the defendant's discharge, as were allowed by the master, in those instances where *C. C. R.* had no funds in hand belonging to the estate, at the time of the payments mentioned in the items of the defendant's discharge, so allowed.

So far as *C. C. R.* acted as the authorized agent of the administratrix, I admit he ought not to be charged with interest on moneys belonging to the estate, provided he acted with good faith, and according to the directions of his principal. But in respect to the receipt of rents of the real estate of *Nicoll*, he could not have acted as agent of the administratrix, for she had no power over these subjects. He acted in respect to the real estate as assumed trustee, for the infant heirs of *Nicoll*, except so far as the proceeds of the real estate arose from sales by the administratrix, under an order of the Court of Probates. I am induced to think, that interest was too extensively allowed under the decretal order, now under review, and it was allowed from the consideration, that *C. C. R.* did not keep the moneys of the estate distinct from his own, and suffered balances to accumulate on hand, from year to year, while interest was growing or accumulating on debts due from the estate. I ought to have given more weight to the consideration, that *C. C. R.* was acting, in general, as the agent of the administratrix. He avers, in the answer, that he acted in this character, and Mrs. *Ludlow* herself confirms it by her testimony. He was in fact her banker, except so far as he meddled with the rents or pro-

ceeds of the real estate, in cases where she had no authority to act herself, or to confer power upon him. It does not appear, that he ever refused to obey her directions, or refused to account; and under all the circumstances, I shall modify the former decree, touching this question of interest, and confine it strictly to those items in the account, which cannot rest upon his agency under the administratrix, but must be referred to his character as assumed guardian, (and so he declared himself to be,) for the heirs of *Nicoll.* In the character of trustee for the infants, he must be held strictly to the obligations of his trust, which he assumed, without the sanction of a regular authority, and without giving the requisite security, that is demanded in such cases.

The exceptions, which were taken on the part of the heirs of *Nicoll,* and overruled, were opened for review in consequence of the rehearing granted to the opposite party. *But on a re-examination of them, I see no reason* to alter the former decree.

The charges, that are sought to be allowed, and which were disallowed by the master, rest on the testimony of Mrs. *Ludlow,* and that is not sufficient against the answer of *C. G. R.,* which, though inaccurate in several respects, is not sought to be impeached as intentionally wrong.

She referred to a paper or memorandum not produced, and to her account rendered to the surrogate, in which some of these items in question are stated to have been paid. The answer of *C. C. R.* had schedules annexed to it, which were declared to contain a true account of the moneys received and expended; and it is to be here observed, that *C. C. R.* lived 18 months after his answer was put in, and that answer was not put in issue in his life time. The answer seems to have been a direct and pertinent answer to the interrogatories in the bill, for he was called upon to state, " what part of the personal estate of Doc-

tor *S. N.* had come to his hands, and what part had been sold or assigned, and that he should set forth a detailed account of the personal estate, and the moneys arising therefrom, and discover and produce the accounts of his transactions."

On this subject, the testimony of Mrs. *L.*, in opposition to the answer, would have been interested and inadmissible, if she had not been discharged by the heirs of *Nicoll*, on the 10th of *November*, 1810, from the charge of "all moneys, goods and accounts, received by her as administratrix." Though this was not a technical release from the want of a seal, it was a complete settlement with her, and acquittance of her as administratrix; and it becomes a serious question, whether these heirs can, by means of her testimony, throw the responsibility which belonged to her as principal, exclusively upon her agent. The administratrix was the person immediately and properly responsible to the heirs, and she was equally responsible to them for the agency of *C. C. R.*, whom she employed. It was in her power, at any time, to have settled with her agent, and to have discharged him, and if it was done *bona fide*, and not collusively, the settlement would have been a protection to the agent against the heirs. (See the cases cited, and commented upon, in 3 *Johns. Ch. Rep.* 479, 480.) A voluntary discharge of the principal would seem to be a discharge of the agent also. There was no mistake in the case. The heirs, it is evident, were duly and fully apprized of the great extent of this agency, and there is something very forbidding in the attempt to charge the estate of the agent with additional items, in opposition to the answer, and on the single testimony of the administratrix, who has been released.

I shall, therefore, confirm the former decree, so far as it disallowed the 2d exception taken on the part of the executors of *C. C. R.*, and so far as it disallowed all the ex-

ceptions taken on the part of the heirs of *Nicoll*; and I shall modify the decree as to the third exception on the part of the executors, by exempting the estate of *C. C. R.* from the payment of interest on monies belonging to the estate of *Nicoll*, and which were received under the authority of the administratrix. But I shall still direct the estate to be charged with interest on all monies received by *C. C. R.*, as rents and proceeds of the real estate of *Nicoll*, except the proceeds of sales of the real estate, made in the name, and by the authority, of the administratrix, under the orders of the Court of Probates.

Order accordingly.