MORGAN (TARDY v.). See Case No. 13,752.

---

## Case No. 9,809.

### MORGAN et al. v. TIPTON et al.

#### [3 McLean, 339.] [1]

Circuit Court, D. Indiana. May Term, 1844.

PRINCIPAL AND SURETY — EXTENSION OF TIME GIVEN — FRAUD BY INDORSER — PLEADING IN EQUITY—ANSWER — NEW MATTER—WHEN ANSWER EVIDENCE—USURY.

1. If the indorsee give time to the maker of the note or the executor of a mortgage to receive the payment of it, the indorsers are discharged.
[See Bank of U. S. v. Lee, Case No. 921; Bank of U. S. v. Hatch, Id. 918.]

2. If there has been fraud on the part of the indorsers, they may be made liable on that ground.

3. A defendant in his answer cannot introduce new matter in the nature of a cross bill, and require the plaintiff, and others under whom he claims, to answer it.
[Cited in Lockwood v. Cleaveland, 6 Fed. 724.]

4. Such is not the English practice, which we have adopted. Under the laws of Indiana, no notes except those given to banks are placed under the mercantile law.

5. On all other instruments, the maker must be prosecuted to insolvency, before he can have recourse to his indorser.

6. A mortgage given to secure the payment of an usurious note, the usury not being purged, is infected, and subject to the same rule as the note.

7. In Indiana, usury makes void the instrument.

8. If the holder of an usurious note, not known to be usurious by him when received, yet have a knowledge of the usury before the mortgage was taken, it makes void the mortgage.

9. Even without any notice, the mortgage having been given for an usurious debt cannot be enforced.

10. The defendant's answer is evidence, when responsive to the bill.
[Cited in Tufts v. Tufts, Case No. 14,233.]

In equity.

Fletcher & Butler, for complainants.
Smith & Wright, for defendants.

OPINION OF THE COURT. The complainants [Morgan, Buck & Co.] represent in their bill that they are merchants in Philadelphia, and that Job Eldridge and Thomas J. Cummings, being indebted to them in a sum exceeding four thousand dollars, Eldridge assigned to them a note given by Spear J. Tipton to Cummings, and by Cummings assigned to Eldridge, for three thousand three hundred dollars, dated the 17th of April, 1838, with ten per cent. interest, amounting at the time of the assignment to three thousand, seven hundred and sixty-two dollars, in pay-

[1] [Reported by Hon. John McLean, Circuit Justice.]

ment to the complainants in part of their debt. That to secure the payment of said note, Tipton executed to Cummings a mortgage on one hundred and sixty acres of land, in Cass county, Indiana. And the complainants allege that Eldridge represented that the said sum was justly due by the said Tipton. That Cummings assigned to them the mortgage, and that a credit for the amount of the note was entered in the account of Eldridge & Cummings. That in May term, 1840, Tipton confessed a judgment on the note, including interest, amounting to the sum of three thousand nine hundred seventy-five dollars and fifty cents. That on the complainants agreeing to give a stay on the judgment of two years, Tipton executed a mortgage on several tracts of land, to secure the payment of the judgment, with seven per cent. interest thereon. And the bill states that the time for payment has long since elapsed, but Tipton has not paid the judgment or any part of it. And the complainants pray that the said Tipton, and also his co-defendants Eldridge & Cummings, may answer under oath and show why the complainants should not have the relief for which they pray. They allege that Tipton pretends that the aforesaid note was given for an usurious consideration, and also the judgment and mortgages, all of which are, consequently, void; but the complainants aver that this pretence is untrue in point of fact: and they pray, if such a defence shall be set up and sustained, by the said Tipton, that then a decree shall be rendered against Eldridge & Cummings for the amount of the note and interest. Among other interrogatories put by the complainants, the defendant Tipton is called to answer, "whether said defendant did not make and execute to said defendant Cummings the said note and mortgage, or either, and which of them, as is in the bill in that behalf named; and, if yea, whether the same were not made and executed for a good and valuable consideration and as evidence of and security for a just and subsisting debt, or for what consideration and purpose were they made and executed." Also, "whether Tipton and wife did not make, execute and acknowledge the said deed of mortgage to the complainants in their bill named, and upon the consideration and agreement therein named, or upon some other and what consideration and agreement." And the bill prays that an account may be taken of the judgment, &c., and that unless payment shall be made in a reasonable time the mortgage may be foreclosed and the lands sold, &c., and that if the said Tipton shall set up a good and equitable defence, the said Eldridge & Cummings may be decreed to pay the judgment, &c. Eldridge & Cummings demur to the bill, and the defendant Tipton, in his answer, admits the judgment, and the execution of the mortgage to secure the payment of it, as stated in the complainants' bill. And he further states, that on the 1st of May, 1836, being in great

want of money he loaned from Cummings five hundred dollars for six months, for which he agreed to pay two hundred and fifty dollars interest. He accordingly executed his note for seven hundred and fifty dollars, payable in six months; and if payment should not be punctually made, ten per cent. interest, from the date of the note. When the note became due, being unable to pay it, the defendant loaned, in addition to the sum before borrowed, two hundred and fifty dollars; the former note being cancelled, he executed another note to the said Cummings for eighteen hundred dollars, payable in six months, and if not paid punctually, ten per cent. interest from the date. To obtain a further indulgence for a year, and on the cancelment of the note last given, the defendant executed another note for three thousand dollars, payable in twelve months, with ten per cent. interest, from the date of the note, if the payment should not be made punctually. When that note became due, not being able to pay it, the note was cancelled, and another note for three thousand three hundred dollars, payable in six months, was executed by the defendant, which, if not paid punctually, was to draw ten per cent. interest, from its date. To secure the payment of this last note the mortgage was executed first named in the complainants' bill, and which, after the mortgage was executed to secure the payment of the judgment to the complainants, was cancelled. And these facts are stated, as defendant alleges, in answer to the above interrogatory. The defendant having answered the bill, makes his answer in the nature of a cross bill, and the complainants, with his co-defendants, Eldridge & Cummings, are made defendants; and he prays that they may be required to answer the matters and things specified in his answers and he propounds several interrogatories. Eldridge & Cummings demur to the cross bill as set up in the answer; and the complainants answer the same.

The first question for consideration is, whether Eldridge & Cummings are proper parties to the bill. The demurrer which they have filed raises this question. They are not charged with fraud or combination to the injury of the complainants. On the contrary they allege that the charge of usury set up by Tipton is untrue. But they pray if they shall not obtain a decree against Tipton on the mortgage, that Eldridge & Cummings may be decreed to pay the judgment for which the mortgage was given. There is then nothing on the face of this bill, which might not be stated against the promise and indorser of a note in every bill to foreclose a mortgage, given by the maker of the note. Unless there be some peculiar ground of equity stated, the remedy against these persons is a legal one, and this remedy cannot be invoked by the complainants until they shall have prosecuted the maker of the note to insolvency.

Under the statute of Indiana the note is not negotiable as mercantile paper. Two years' indulgence was given on the judgment, on the defendants executing the mortgage in question. This would release from liability the prior indorser if the note be valid. Whether it would release Eldridge & Cummings from their original liability to the complainants, would depend upon the fact whether the note was assigned to them in payment of their account. If it were taken in payment, as from the statements in the bill would seem to be the fact, then the only recourse of the complainants would be on the indorsement of the note. And this recourse, as has been stated, is cut off by the indulgence given to the maker of the note. If the note were given for a fraudulent or usurious consideration, so as to render it void in the hands of the complainants, on that ground they would have recourse against the assignors. And this would be the case whether the liability was sought to be enforced at law or in equity. This ground is not only not taken in the bill, but it is expressly repudiated. There is then on the face of the bill no ground stated on which Eldridge & Cummings can be held liable, and their demurrer must, consequently, be sustained. Had the bill alleged a fraudulent combination between Cummings and Eldridge to assign to the complainants, in payment of a debt due to them, a valid note, the bill might have been sustained against them and Tipton also. The facts, that the note was given to one of the partners, by him assigned to the other, and by that other assigned to the complainants, in payment of the partnership debt, would require little, if any, additional proof, if the note be usurious, to establish a fraudulent intent. The demurrer being sustained to the original bill, necessarily disposes of the demurrer by Eldridge & Cummings, to the cross bill attempted to be set up in the answer. Now if there is nothing on the face of the original bill these defendants can be required to answer, they are not proper parties to the bill, and cannot be called to respond to the interrogatories propounded in Tipton's answer. But there is another ground equally fatal to this answer being treated as a cross bill. There is no such practice recognized in the courts of the United States. In Kentucky such a practice prevails; but the chancery procedure of the courts of the United States is governed by the English practice, which requires a defendant to file a cross bill, if he desire the answer under oath, of his co-defendant or the complainant. This proceeding is regulated by the rules lately adopted by the supreme court. In this view then, the defendant having no right to set up in his answer the matter of a cross bill, objection may be made to the proceeding on motion or by a demurrer.

Two questions remain to be considered: 1. Can Tipton avail himself of the usury, under the circumstances of this case? 2. If he can, has the usury been proved?

By the second section of the act of 1833, it is provided that no rate of interest exceeding ten per cent. shall be received; and by the third section, that any one who shall violate the second section, shall be liable to be indicted and fined. These sections are embodied in the revision of 1838. On the part of the complainants, it is contended, that the confession of the judgment and execution of the mortgage by Tipton, preclude him from setting up the usury as a defence. There is no evidence that the complainants had any notice of the usury when Eldridge assigned to them the note. But the proof is clear that they had notice, before the date of the judgment and mortgage. And it would seem that a knowledge of the fact of usury, as communicated to them by their counsel, induced them to indulge Tipton two years for the payment of the judgment. The confession of the judgment and the execution of the mortgage show a settled purpose by Tipton to pay the money. Acts of confirmation of a void contract could scarcely be stronger. Usury by the Indiana statute, as construed by the supreme court of that state, makes void the contract. Where A made an usurious note to B, who transferred it to C, for a valuable consideration, without notice of the usury, and thereupon A gave a bond to C for the amount, the bond was held not to be affected with the usury. 1 Term R. 390. A bona fide purchaser, without notice, under a sale duly made, pursuant to the statute (of New York), by virtue of a power of attorney contained in the mortgage, is not affected by usury in the original debt for which the bond and mortgage were given. 10 Johns. 195. An injunction will not be granted on the charge of usury, where the party seeks the discovery of the usury, and a return of the excess beyond the lawful interest, for the usury would have been a good defence at law, and no reason is given why the plaintiff did not make the defence at law. 1 Johns. Ch. 49. Where the plaintiff was sued at law on notes alleged by him to be usurious, and he suffered judgment to be had against him, without making a defence or applying to this court on a bill of discovery in due season, he was held concluded and not entitled to relief. These are the authorities relied on to show that Tipton is, by his acts, precluded from setting up as a defence usury in the note on which judgment was entered. That by giving the mortgage, he not only waived the usury, but procured a forbearance of two years, which of itself constitutes a valuable consideration. Whether the forbearance is a valuable consideration, must depend upon the validity of the demand. If that were void, by being usurious, it does not strengthen the cause of the complainants. The complainants had no notice when the note was assigned to them, but this, it seems, does not relieve them from the effect of the usury. In Lloyd v. Scott, 4 Pet. [29 U. S.] 228, it was held "that usurious securities are not only void, as between the original parties, but the

illegality of their inception affects them, even in the hands of third persons who are entire strangers to the transaction." "A stranger must take heed to his assurance at his peril, and cannot insist on his ignorance of the contract, in support of his claim to recover upon a security which originated in usury." The same doctrine is laid down in the case of Lowe v. Waller, 2 Doug. 735, Cowles v. Woodruff, 8 Conn. 35; Wales v. Webb, 5 Conn. 154; Baldwin v. Norton, 2 Conn. 161. The note then in the hands of the complainants as assignees, if usurious, was void. It was not negotiable, though that fact is not noted as important in the cases cited. Do the judgment and mortgage purge the complainants' demand from the taint of usury?

In the case above cited from 10 Johns. 195, a sale under a mortgage was held good, and could not be affected by usury in the debt for which the mortgage was given. By the statute of New York such a sale was equivalent to a foreclosure by a decree in chancery. In the case under consideration there has been no sale, and this proceeding is on the mortgage and not on the judgment. In Lamme v. Saunders, 1 T. B. Mon. 266, it was held that to a scire facias on a judgment, obtained on an usurious contract, the party will not be permitted to plead the usury in avoidance of the judgment. The same doctrine is in Cro. Eliz. 585; Ord, Usury, 98. But in the same case the Kentucky court held that a note not executed for the judgment, obtained on an usurious contract is void, and the usury may be pleaded, notwithstanding a judgment was rendered for the demand. In Wickes v. Gogerly, 1 Car. & P. 396, the court held that a security given in lieu of a former security, which was tainted by usury, is void, unless in the second security a deduction is made of all sums paid usuriously under the former security. And, Preston v. Jackson, 2 Starkie, 237, the court decided that a party cannot recover on a new instrument which operates as a security for any usurious interest, although it be founded upon a new settlement of the account between the borrower and the lender, and the original securities have been cancelled. That was a case between the assignee and maker of the note. In Roberts v. Goff, 4 Barn. & Ald. 92, the court set aside a judgment founded on an usurious security, without compelling the defendant to repay the principal and interest. There is no pretence that either on the confession of the judgment or the execution of the mortgage the usury was purged. And as before remarked, the complainants had notice of the usury before the date of the judgment and mortgage. The present bill is brought to foreclose the mortgage, an instrument infected with usury. In Lawless v. Blakey, 4 T. B. Mon. 488; 5 T. B. Mon. 394, 470, it was held the defendant may make his defence at law, or omit to do so and come into the court of chancery, either to enjoin the judgment, or to recover the money paid

usuriously on it. But he cannot avail himself of both jurisdictions. If he make a defence at law, he must abide by it. Where usury has been sufficiently pleaded in an action at law, and on demurrer the plea adjudged bad and judgment rendered, the matter cannot be set up again in equity. The cause should be taken to the court of errors. Lamme v. Saunders, 1 T. B. Mon. 267. Where an unsuccessful defence is made before a justice of the peace, and an appeal taken to the circuit court which is dismissed for some fault in the justice or clerk, the party may still have relief in chancery, and this is a just exception to the rule that when the party makes a defence in one court he shall not apply to the other. Cave v. Davis, 5 T. B. Mon. 394; Pearce v. Hedrick, 3 Litt. [Ky.] 109.

There is nothing then in the confession of the judgment, or in the execution of the mortgage, which precludes the defendant from setting up the usury in his defence. The remaining question is, whether the usury has been proved. Cummings has been examined as a witness in the case before he was a party, but to every interrogatory which required him to speak of the usury he refused to answer, on the ground that he could not do so without subjecting himself to a criminal prosecution under the statute. A witness who fears no disclosures will never shelter himself under such a principle, where his character is involved. If, with truth, he could have denied the charge of usury he would, by his own oath, have denied it. The other witnesses show that Tipton was embarrassed, and that he was liable to be imposed on by money lenders. But these do not conduce to establish the usury. The defendants' counsel insist that it is established by Tipton's answer. If the statements of this answer be true, in the creation of the debt demanded there was a shameless exorbitancy, as reckless of principle as of public opinion. By the advance of the sum of seven hundred and fifty dollars, disconnected with any other operation, in little more than two years, by renewing the loan, it was increased to the enormous sum of three thousand three hundred dollars. And the proof of this usury it is insisted is found in the answer of Tipton. So far as that answer is responsive to the bill, it is not only evidence, but evidence which can only be overcome by witnesses, or one witness and strong circumstances. The important inquiry then is, whether, in regard to the usury, the answer is responsive to the bill.

The first interrogatory above stated, and to which Tipton is especially called to answer, involves the consideration of the note and mortgage given by him to Cummings, and "whether the same were not made and executed for a good and valuable consideration, and as evidence of and security for a just and subsisting debt, or for what consideration were they made and executed." This inquiry is as broad as language could well make it. It would seem as if the draftsman of the bill was desirous of eliciting not only the facts in regard to the justice of the debt, but a full explanation of all the circumstances connected with it. For he asks, if the bond and mortgage were not executed as "evidence of and security for a just and subsisting debt, for what consideration and purpose were they executed." Now, in reference to this interrogatory, Tipton states that the above instruments were not given as evidence of and security for a just debt, and he goes on to explain the facts in support of this denial. The debt is shown to be unjust by the unconscionable and illegal exactions made by Cummings. And this is clearly within the scope of the interrogatory. In 1 Johns. 582, it is said, where the complainant in his bill inquired into the consideration of the assignment of a note, but asked nothing as to usury; and the defendant in his answer alleged usury, the indorsement of the note was held prima facie evidence of a full and adequate consideration, and the answer of the defendant not to be evidence of the usury which ought to be proved. If this be law, it does not apply to the case under consideration. For Tipton is not only called to answer as to the consideration of the note, but also as to the justice of such consideration. He answers it was unjust because it was usurious. Now, can it be pretended that the term usury is not responsive to the bill, because he was not specially called to answer whether or not the note was usurious. Might not Tipton, if such had been the fact, have answered that the note was unjust, because it was forged, or was given without any consideration, or was fraudulently obtained. This is as much a question of common sense as of law. In Woodcock v. Bennet, 1 Cow. 711, 742, the complainant prayed a specific performance under certain articles of agreement, which had come to the defendant's hands, and called on him to answer as to the making of the articles, how they were disposed of, and when, where, and under what pretences, he got possession of them. He answered admitting the articles, but alleged that by consent of the parties, the articles were rescinded, and the seals torn off; the court of errors held that the answer being responsive to the bill and within the discovery sought, was legal and competent evidence. To the same effect is Mason v. Roosevelt, 5 Johns. Ch. 534, 542, 543. In McCaw v. Blewit, 2 McCord, Eq. 90, 101, 102, the bill charged that certain advances had been made for the use of the defendant, who answered that he had given his note for all advancements, and though this was an affirmative fact in avoidance, yet it was held conclusive until disproved. Where an affirmative fact is set up in avoidance of an express allegation in the bill, it must be proved. But where such fact is within the discovery sought for, it is evi-

dence. Some decisions, it is admitted, have gone so far as to hold that the answer is not evidence where it asserts a right affirmatively, in opposition to the plaintiff's demand. 1 Munf. 395. In the nature of things there can be no fixed rule on this point. Its decision must depend upon the words of the bill and of the answer. If the bill requires the defendant to answer whether he did not execute a certain note or bond, and the defendant admits the execution of it, and alleges that he paid it, the payment, not being within the interrogatory, must be proved. But if the bill allege that the note was given on a valuable consideration, and for a just and subsisting debt, the answer must be as to the justness of the debt and the facts of the consideration. In Reeks v. Postlethwaite, Coop. Ch. 161, an explanation, essentially connected with the answer to the bill, is held to be evidence.

As the interrogatory in the case under consideration required the defendant to state what the consideration was, and whether the note and mortgage were not given to Cummings for a subsisting and just debt, no doubt is entertained that a full response by the defendant not only authorised but required him to state fully the nature of the consideration. This he has done, and there is no proof against the statement in the answer, consequently that statement, which establishes the usury, is evidence. The mortgage to the complainants, on which this bill is filed, was given to secure the payment of the judgment, which was founded on the note infected with usury, of which the complainants had full notice. As has been already stated the judgment included the usurious interest. That interest amounted to the sum of three thousand three hundred dollars, deducting therefrom the sum of seven hundred and fifty dollars, which was the amount advanced by Cummings. The two years' indulgence, and the confession of the judgment, and the execution of the mortgage, was manifestly a plan adopted to avoid the effect of the usury by the complainants. It was substantially the substitution of a new security for the usurious note, and as the security retains the usury it is as fatally infected with the vice as the original note. Under such circumstances Tipton would not be precluded from filing his bill against the complainants and the other parties to the note, to set aside the mortgage. And if he might have done this, it is clear that he may set up the usury on a bill to foreclose the mortgage. Where the usurer, by an action at law, attempts to enforce the obligation, which is usurious, the court will sustain the defence, and will not require the defendant to pay the amount loaned, with legal interest. But where the borrower seeks relief on the ground of usury, by filing his bill, the payment of the sum loaned, with legal interest, is made a condition of his relief. And here a question arises, whether in this case, the payment of the sum

borrowed by Tipton, with ten per cent. interest, ought to be exacted of him. If this were a bill for relief by him, he would be required to state that he had offered to pay the principal and interest, and the court would require the money to be brought into court. before relief would be decreed. This is a salutary and just mode of proceeding; and I do not perceive why the same thing may not be done in the present case. In the case above cited, of Roberts v. Goff, 4 Barn. & Ald. 92, where judgment had been entered on a warrant of attorney, and where there had been an agreement to give time, it was contended that the execution and judgment ought to be set aside, if the court had no doubt as to the usury, until the defendant had paid the money advanced, with legal interest. and the case of Hindle v. O'Brien, 1 Taunt. 413, was cited in support of the position. But the court overruled the case cited, and held that the instrument being void, the practice of the court had been otherwise. That being a case at law, in regard to practice, is different from the one now under consideration. The answer of the defendant sets up the usury, and admits the sum loaned, there is no difficulty, therefore, as to the relief to which he is entitled. And the question is. whether in this suit the defendant shall be required to pay the sums loaned, with interest, or the bill shall be dismissed, and the complainants or Cummings left to seek recourse against him by an action at law. The mortgage being infected with usury is void, as also the note on which the judgment was entered; no action can be sustained on either instrument, but Tipton is bound to pay the sum loaned, with interest, in equity; and this equity, by the assignments, may be considered as vested in the complainants. To give them a recourse against Eldridge & Cummings, for the original consideration of the note assigned to them by Eldridge, it may not be necessary to prosecute this equity. Their recourse must be complete. from the fact that the note was void. But no doubt is entertained that the complainants, in equity, may recover from Tipton the sum he may be bound to pay to Cummings. Then why may not the defendant be required to make such payment to the complainants, in the present case? The specific prayer of the bill is, a foreclosure and sale of the mortgaged premises. But there is a general prayer, under which, any relief in the premises, to which the complainants may be entitled, can be given. By requiring Tipton, in this case, to pay the amount for which he is liable, a circuity of action is avoided, and this is a cogent reason why the power should be exercised. In addition to this consideration, it keeps clear of the statute of limitations and other defences, which do not go to the merits of the case.

Upon the whole, it is ordered and decreed, that the defendant, Tipton, do pay to the complainants, or into the clerk's office, by the

first day of the next term, the principal loaned by him from Cummings, with ten per cent. interest thereon. The interest to be calculated up to the time of giving each note, as stated in Tipton's answer, and to be added to the principal; and interest on the entire sum, to the next note, &c. Let the calculation be made by a master.