Morrison *v.* Ogdensburgh and Lake Champlain Railroad Company.

MORRISON *vs.* THE OGDENSBURGH AND LAKE CHAMPLAIN RAILROAD COMPANY.

THE OGDENSBURGH AND LAKE CHAMPLAIN RAILROAD COMPANY *vs.* MORRISON.

An agent, while in his principal's employ, can accept no employment hostile to the interest of his employer. If he does so, and receives remuneration therefor, it affords good and sufficient ground for his discharge.

Nor can an agent act in the business of his agency, for himself and his principal at the same time.

Thus, an individual employed by a railroad company, as its agent, to purchase wood and timber for its use, has no right, while purchasing woodland for the company, as such agent, to receive from the vendor a commission for promoting the sale.

And where such agent, being consulted with by a director of the company about the purchase, examined the land with the latter, and gave his opinion of the quantity of wood thereon, and advised the purchase, but without informing such director that he was offered a commission if he found a purchaser for the land, and under such advice the land was purchased by the company; *Held* that the agent had failed to do his whole duty; and such failure constituted a breach of any contract of employment, and justified his discharge.

*Held, also,* that the company having been compelled, through the agent's neglect of duty, to pay more for the land than they otherwise would have paid, the difference, being the amount of the agent's commissions, in equity belonged to the company.

Where a corporation succeeded certain trustees in the ownership of a railroad, but there was no evidence that, in doing so, it assumed the existing contracts of such trustees, but, so far as appeared, it merely continued an individual as an employee of the road, in the same line of business he was

in, under an implied contract to pay, but without any agreement as to time; *Held*, that such employee could be discharged at any time by the company, without liability for further employment.

THE above entitled causes are between the same parties, and the same question arises in each.

The first above entitled action was to recover for services of the plaintiff, as agent for the defendants in the purchase of wood and timber, for the use of the defendants' road, during the months of August, September and October, 1866, claiming under a special agreement, at $1000 per annum.

The second above entitled action was to recover damages, alleged to have been sustained by the railroad company by reason of the defendant having acted as their agent in the purchase of wood, and, while doing so, taking a commission from the vendor on condition that he would promote the sale.

Both cases were tried at the circuit. In the first, the plaintiff was nonsuited, and in the latter, a verdict was directed for the plaintiffs, subject to the opinion of this court at general term.

In the first case, Morrison excepted to the direction for a nonsuit, and now moves for a new trial on a case and exceptions; in the other, the railroad company moves for judgment on a case.

In the first case, it appeared that the railroad, of which the defendants are now the owners, was from 1862 to August, 1865, in the hands of, and owned by, certain trustees, who operated the same for the benefit of their trust; that they employed one Hoyle as their superintendent, and, as such superintendent, he on the first day of November, 1864, made a bargain with the plaintiff for his services, at $1000 per year, payable monthly, which bargain was to run until November 1, 1867; that the plaintiff's general duty was the purchase of cordwood, lumber, ties, &c.; that the defendants organized as a cor-

Morrison *v.* Ogdensburgh and Lake Champlain Railroad Company.

poration in August, 1865, and took possession of the road; that no new bargain was made with said new corporation, but the plaintiff continued in its employment until June 20, 1866, when he was notified that his services were no longer needed; that from that time until the commencement of this action he had held himself in readiness, under the contract, to perform service, or do any work the company required, and that he was not able to procure any other employment.

It further appeared that in 1865 one Luther S. Carter was the owner of two thousand three hundred and forty acres of wood land, lying along the line of and adjoining said railroad; that in the fall of 1865 Carter proposed to the plaintiff to sell said wood land at $5 per acre, and at the plaintiff's suggestion promised to pay the plaintiff ten per cent commission if he would find a purchaser at that price. The plaintiff informed the superintendent of the defendants that said land could be bought, stating the price, and that he could get a commission on the sale. The superintendent communicated to the officers of said company only the fact that said wood land was for sale, and shortly after, one of its directors consulted with the plaintiff about its purchase, examined the land with Morrison, the latter giving his opinion of the quantity of wood on the land, and advised its purchase, but did not communicate to said director that he was offered a commission if he found a purchaser therefor. Under this advice said land was purchased, at $5 per acre, and, after payment, said Carter paid to the plaintiff $1000 as his commission on said sale.

In the second case, the proof was the same as to the duties of Morrison's employment, and in relation to the advice to purchase, the purchase, payment, and receipt of commission.

*James Averill*, for Morrison.

*Brown & Hasbrouck*, for the railroad company. I. Morris was guilty of a violation of duty in a fiduciary relation, amounting to the most rank and dangerous kind of dishonesty, in the transaction which caused his discharge. 1. We take his own version of the facts as true for all purposes of this action, however much he evidently attempts to color them in his favor. By his own story we find that he was the honored and trusted agent, of the road, under the title of wood and timber agent employed by the corporation for his whole time, for a year, at a salary guaranteed by them and accepted by him as a fair compensation, not for any manual service, but that the corporation might have the benefit of all his intellectual and moral powers, in behalf of the interests of the road, and especially in the general duty of looking out for and providing prudentially for all wood, timber, ties, &c. for the road for its whole length. It was, of course, his especial duty to use his best knowledge, skill, judgment and forecast to take care to have the road always provided with all the wood, timber, ties, &c. that would be required. And when he failed to give to the corporation the full benefit of all his knowledge and ability in those respects, he failed to perform what was his manifest duty. 2. The subterfuge that he had never bought any wood land or timber standing for the company, and was only to give the corporation the benefit of his judgment and knowledge in purchasing wood, &c. already cut, is too shallow to deceive any sensible judge. He was to do all he could to provide the road with these necessaries in the most economical manner. 3. The fact that one of the directors was deputed to examine this wood land and negotiate about its purchase jointly with him, did not relieve him of the duty of giving his best knowledge and skill in the business, and in the whole of it. It is apparent that the corporation desired the benefit of the judgment of two men instead of one, because the transaction was a

Morrison *v.* Ogdensburgh and Lake Champlain Railroad Company.

large one.   4. But even if Morrison had had a right to say when applied to act in the business, that it was no part of his duty to aid in making purchase of wood land, but only to buy wood already cut; yet he did not do so. He put his own interpretation upon his duty by undertaking to act, and was bound to act according to the best of his ability; and for the time he was acting as the agent of the corporation, whether the business was, or not, within the original bounds of his employment.

II. It is a rule of law applicable to this case, that a person employed as an agent in any respect, cannot be allowed to act for his own benefit on the subject of his agency or trust, when his own interest may conflict in any manner with the interest of his principal.   This rule is elementary, and is established by the authority of elementary works, and by a long course of decisions.   (*See Story on Agency,* §§ 192, 207, 210, 211; *Massey* v. *Davies,* 2 *Vesey, Jr.* 317; *Reed* v. *Warner,* 5 *Paige,* 650; *Story's Eq. Jur.* § 315.)

III. The fact that Morrison communicated to Mr. Hoyle, the superintendent of the road, that he was to have ten per cent on the purchase, does not relieve him in the slightest degree.   1. It does not appear that the communication was made to Hoyle, with the purpose of giving to the corporation the benefit of the knowledge.   2. Whether the communication was made in confidence, or why Hoyle did not inform the officers of the company engaged in the purchase that the real price at which Carter was willing to sell the land was $4.50 per acre, instead of $5, does not appear.   But it is enough that Morrison well knew that they had not the profit of that information, and he concealed it from them, and took and kept the $1000. 3. Hoyle, though superintendent, was not acting for the corporation in this matter of the purchase, but all he did was in the interest of Morrison, and Morrison knew it.   4. He had no authority to give the assent of the corporation, per-

Morrison *v.* Ogdensburgh and Lake Champlain Railroad Company.

mitting Morrison to use the advantages of his position to speculate at the expense of this road.

IV. There was no error in excluding evidence of the value of the property. Its value was necessarily mere matter of opinion, and of no certainty. It was the plain, simple, straightforward duty of every officer of the road, having any concern with its purchase, to exercise his knowledge and judgment in purchasing it at the lowest price at which the owner was willing to sell. That it makes no difference as to what was the real value of the land is clearly established by *Massey* v. *Davies*, (2 *Vesey, Jr.* 317;) *Story's Eq. Jur.* §§ 210, 315, *et seq.* and cases there cited; and is clear on general principles, upon consideration that if Morrison and Andrus had both acted honestly, neither of them would have been under any liability if the land had proved to be worth only $1 per acre. The corporation took all the risk, consequently, and was entitled to all the benefit of their best judgment and discretion.

V. The fact that the deed was taken in the name of the president, treasurer and chairman of executive committee, in their individual names, and not in the name of the corporation, cannot aid the plaintiff. He knew the purchase was made for the corporation, and it did not concern him in what form the title was taken. But the land actually belongs to the corporation. It was bought for the corporation by its officers and paid for with its money. Any attempt by the officers in whose name the title stands, to hold it for their individual use, would be as fraudulent as the attempted swindle by Morrison, and be equally ineffectual.

*By the Court,* JAMES, J. The nonsuit was put upon the ground that Morrison, while in the railroad company's employ could accept no employment hostile to the interest of his employer, and that having done so, and received remuneration therefor, it afforded good and sufficient ground for his discharge. And the verdict in the other case was based

Morrison *v.* Ogdensburgh and Lake Champlain Railroad Company.

on the same principle, that being the agent of the railroad company, he could not take a commission from the vendor of property purchased upon his advice, by his principal, and hold it as against said principal.

There was no question of fact for the jury in either case; nor was there any dispute about the character of the plaintiff's employment. It was to make purchases of wood, lumber, ties, &c. for the use of the corporation along the whole length of its road, and this included every purchase which would tend towards supplying that want of the corporation. It is true Morrison was not, in terms, authorized to buy or bargain for land, simply as land, and yet purchasing timber land for the lumber and wood upon it was within the spirit and scope of his employment. But whether it was or not, he was in the company's employ, and was, by its officers, consulted as to the value of said land as timber land, and the propriety of its purchase.

The basis of all dealings is good faith. No man can serve two masters. He that is intrusted with the business of others cannot be allowed to make that business an object of interest to himself; for the frailty of nature will not admit of impartiality when a person is both judge and party, or sustains the two characters of seller and buyer.

*Paley on Agency*, lays it down as a fundamental rule applicable to both sales and purchases, that an agent employed to sell cannot make himself the purchaser; nor if employed to purchase, can he himself be the seller. The expediency and justice of this rule are too obvious to require explanation; for with whatever fairness he may deal between himself and his employer, yet he is no longer that which his service requires and his principal supposes and retains him to be; he acts not as an agent but as an umpire. (*Duer's Paley on Agency*, 33.) The undertaking of an agent on a salary, to purchase for the use of his principal, is to buy in the most beneficial manner for him, and therefore it is declared to be contrary

to the duty and trust of a person in that situation to be himself the seller, unless it be so understood by plain and express consent. (*Id.* 16, 37.) In the case of *Massey* v. *Davies*, (2 *Ves. Jr.* 317,) the court of chancery in England held that an agent employed to furnish timber for a colliery, at a certain stipulated salary, was bound to account for profits made by selling his own timber to his principals under the name of another person with whom he had clandestinely engaged in partnership. The doctrine on this subject is ably enforced and elucidated in two recent cases decided by two eminent equity judges in England. (*Gillette* v. *Peppercorne*, 3 *Beav.* 78, and *Benson* v. *Hawthorne*, 1 *Young & Collyer*, 326.) In the first case the plaintiff employed the defendant, a stock broker, to purchase some canal shares; the defendant apparently bought them from a third party as ostensible owner, who it afterwards turned out was the mere trustee of the defendant. The court, *after a lapse of several years, and without entering into the question of the fairness of the price,* held that the transaction was void on grounds of public policy and set it aside, with costs. In the second case, the defendant being a director of a joint stock company, established for the building, purchasing, hiring and employment of steam vessels, purchase a vessel for £1340, and afterwards sold it to the company, as from a stranger, for £1500, charging the company with a commission of one per cent. It was held that such a transaction could not stand, in a court of equity, but the defendant must be considered as having purchased the ship at £1340 as agent on behalf of the company, and that he was not entitled to any commission on such purchase. The learned vice chancellor said : " It is obvious that a person so circumstanced as the defendant, was under an obligation to the shareholders at large to use his best endeavor in all matters which related to the affairs of the company for the welfare of the concern thus entrusted (not gratuitously)

Morrison *v.* Ogdensburgh and Lake Champlain Railroad Company.

to his charge ; that without any special provision for the purpose it was by law an implied and inherent term in the engagement that he should not make any other profit to himself of that trust or employment, and should not acquire to himself, while he remained a director, an interest adverse to his duty.   The master of the rolls, in *Gillette* v. *Peppercorne,* above cited, said : " When a man employs another as his agent it is on the faith that such agent will act in the matter purely and disinterestedly for the benefit of his employer, and assuredly not with the notion that the person whose assistance is required as agent has himself, in the very transaction, an interest directly opposed to that of his principal."   The same rule has governed the equity courts of this state ever since their organization.   (*Reed* v. *Warner,* 5 *Paige,* 650.)   In all this class of cases, the question is not whether the agent has acted from good motives, and without fraud, or *whether the property purchased is worth the price paid,* but whether the agent has done his duty to his principal, and acted according to the trust reposed in him.   If he has not, but through default or concealment, in either particular, has obtained a profit or advantage to himself, *he cannot retain it ; it belongs to his principal,* and affords good grounds for terminating such agent's employment. (*Story's Eq.* §§ 323, 207.)   It does not follow from this that an agent may not sell his property to his own principal, if he do so openly, above board, and in good faith, but he must not conceal any facts within his knowledge which might influence the judgment of his principal as to the price or value.   If he does, the contract will be set aside.

The facts communicated to the superintendent of the railroad company in this case did not relieve Morrison from the penalty of the foregoing obligations.   It did not appear that the superintendent was engaged in the purchase of lands, wood, lumber or land for the corporation, or that he had authority to give assent for Morrison to

speculate, through the advantages of his position, out of transactions of the corporation, and at its expense.

It appeared that the directors were the persons to decide upon the purchase of lands for the company. This Morrison knew. He was called upon by one of them in his capacity as agent, for consultation and advice, as to such purchase. If he desired or intended to act fairly with the company, it was to this director that he should have communicated the fact that he was to have a commission from the vendor if a sale was effected. Even then he might not have been able to retain the commission, but he would have exonerated himself from the suspicion that now attaches to his action. But he did not do so; he accompanied that officer in the examination of the property, and permitted the officer to consult him and take his opinion as agent, and to act upon that opinion, without any knowledge by the officer of the secret agreement between said agent and the owner of the land. In this particular the agent failed to do his whole duty. It was not error to exclude proof of the fraud. The case does not turn upon actual fraud, but upon a different theory, which is this: an agent cannot act in the business of his agency, for himself and his principal at the same time, in the same transaction. Had Morrison done his duty as agent, the corporation would have got the land at least $1000 less than it paid. That sum went into Morrison's pocket, secured by that neglect. In equity that money belongs to the railroad company. Such neglect of duty also constituted a breach of any contract of employment, and justified the agent's discharge.

But independent of these considerations, there is another ground on which the nonsuit can be sustained. There was no proof of any contract for a specified time between Morrison and the Ogdensburgh and Lake Champlain Railroad Company. The contract proved was with certain trustees of said railroad. The present corporation did not

come into existence until after such contract, and there was no evidence that in taking possession of said road it assumed the contracts of said trustees. So far as appears, they merely continued Morrison as an employee of the road, in the same business, under an implied contract to pay, but without any agreement as to time. He could therefore be discharged at any time, by the railroad company, without liability for further employment.

The judgment entered on the nonsuit must be affirmed.

Judgment must be directed for the railroad company for the verdict directed by the court, with costs.

