## HUBBARD *v.* NEW YORK, N. E. & W. INVESTMENT CO.†

*(Circuit Court, D. Massachusetts. November 15, 1882.)*

**1. CORPORATION—CONTRACT WITH DIRECTOR.**

If a contract made by a director with the corporation of which he is director is to be construed so as to cover a transaction granting to him enormous commissions, without regard to the debts or other liabilities of the company, it is unreasonable as affecting injuriously the rights of the stockholders, and giving one director of the company a right without regard to the rights of creditors or the liabilities of the company, and is unreasonable and beyond the power of the directors to make with their co-directors.

*See post, p. 705.     *Affirmed. See 7 Sup. Ct. Rep. 353.

2. SAME—WHO DEEMED A DIRECTOR.

    A contract which provides that plaintiff was to be chosen one of the directors of defendant corporation, and by its express terms he was to be invested with the duty of superintending and directing its affairs as one of its directors, must be construed as if he was actually a director at the time of its inception, and as if made with him while he was a director.

3. SAME—WHEN VOID—WANT OF AUTHORITY.

    Directors of a corporation are its trustees, and the validity of their contracts made with a corporation depends upon the nature and terms of the contract itself, and the circumstances under which it is made, and the effect of its provisions; and if they are pernicious, and tend to work a fraud on the rights of the corporation and the stockholders, the directors have no authority to enter into it.

4. SALES—COMMISSIONS—WHEN NOT DUE.

    Where plaintiff was not a broker, and there was no express contract and no circumstances from which it can be concluded that any kind of an implied contract existed between the defendant company and plaintiff by which he was to have a commission on the sale of a railroad effected by defendant's corporation, he is not entitled to recover any compensation.

*R. D. Smith* and *W. W. Vaughan,* for plaintiff.

*John W. De Ford* and *W. A. Munroe,* for defendant.

At Law.

NELSON, D. J., (*orally.*) I have taken the question that was argued yesterday into consideration, and I am now ready to announce my ruling.

The contract upon which the plaintiff's case is founded provides that the plaintiff was to be chosen one of the directors of the defendant corporation. It had in contemplation by its express terms that he was to be invested with the duty of superintending and directing its affairs as one of its directors, and was to have that relation to the company and its stockholders while he was performing his part of the contract. The contract must therefore be construed in the same manner as if he was actually a director at the time of its inception, and as if it was made with him while he was a director. A director of a corporation is not absolutely prohibited by law from entering into a contract with the corporation through his co-directors. Whether such a contract is binding upon the corporation must depend upon its terms and the circumstances under which it was made. Owing to the peculiar relation which the directors owe to the corporation, being strictly trustees, and their position being in every sense fiduciary, their contracts with the corporation should be scanned, if not with suspicion, at least with the most scrupulous care. The validity of such a contract must therefore depend upon the nature and

terms of the contract itself and the circumstances under which it is made. The motives of the parties are not necessarily material, but the effect of the provisions of the contract must be especially regarded, and if they are pernicious and tend to work a fraud on the rights of the corporation and stockholders, in such case the directors must be regarded as having no authority to enter into it. In entering into this contract, I perceive no evidence in the case from which to infer that either the plaintiff or the board of directors had any purpose to perpetrate a fraud on the corporation, or to grant to the plaintiff any undue privileges; but still, if that was the effect of the contract, it cannot be maintained.

In passing upon the question whether the directors had authority to make this contract, I must assume its true construction to be what the plaintiff claims it is, and to embrace commissions to the amount which the contract itself provides upon the contract upon which the Burlington Railroad was sold to the Atchison Company. Now, it seems to me, in examining this contract, that there is very strong reason to conclude that the parties never had in contemplation the meaning which the plaintiff now contends should be given to it. It seems to me that the contract was intended by the parties to relate to a different class of transactions from that which is set forth in the declaration as the breach of the contract upon which the plaintiff relies to maintain his action. They established by this contract a division, comprising four of the New England states, with an office in Boston, and placed the plaintiff at the head of the Boston office, intending to give to him the business originating and transacted within the four states.

Now it appears that the business which culminated in the sale of the railroad to the Atchison Company was a business which had originally come to the New York office. All the plaintiff did after the business had come to the New York office was this: He introduced the company to an agent of the Atchison Railroad, who resided in Boston. He made no contract between the Investment Company and the Atchison road for the sale of the Burlington road. His sole services in respect to the business consisted of his conversation with Mr. Thorndike, his interviews with Mr. Coolidge, the president of the Atchison road, and in making arrangements for a meeting between the directors of the company in New York and the agents of the Atchison road in Boston. The contract itself was made and concluded, its terms settled, and the contract perfected by the New York directors, and not by the plaintiff. The plaintiff's claim here rests upon the assumption that

the contract provided that he was entitled to his one-third of the gross profits resulting to the company upon this business, as his compensation for his services rendered in this particular instance; and although I have grave doubts whether that was a result which the parties intended and was embraced within the meaning of this contract, yet I am bound, in construing the contract as the case now stands, and upon the evidence now before the court, to assume that this particular business was within the terms of the contract.

If this contract is to be construed as granting to the plaintiff the enormous commission which he claims in this suit, one-third the gross profits of the company arising out of this transaction, without regard to the debts or the other liabilities of the company, I am of the opinion that it is a contract which the directors had no authority whatever to make with the plaintiff. The service which he actually performed seems to be simply that of a broker introducing a customer to his employer, through whom a contract was subsequently perfected. If the contract is to be construed so as to cover a transaction of that kind, it was one that was unreasonable as affecting injuriously the rights of the stockholders of the company, and giving one of the directors of the company a right, without regard to the rights of creditors, to say nothing of the rights of the stockholders, in the assets of the corporation, giving him a profit without regard to the liabilities; and being of this nature, it was not a reasonable and fair contract for one of the directors of this corporation to make with his co-directors.

It might be very well claimed, if this contract related merely to a commission on sales actually effected through the Boston office by the plaintiff, or actually originated and perfected within the four New England states embraced by the contract, that it would not be an unreasonable one, provided the results of it were reasonable, not affecting the general prosperity and solvency of the corporation. But if it is to be construed as covering transactions of this nature, where the enormous profit realized in this case would be divided in the proportion of two-thirds to the corporation and one-third to the director, it seems to me to be unreasonable, and a contract that ought not to be sustained. The services rendered by the plaintiff in this case were exceedingly slight. He met his friend, Mr. Thorndike, and called his attention to the road which the Investment Company had in its possession for sale. He subsequently communicated the result of these interviews to the directors of the Investment Company in New York, the result of which was that, subsequently, through the action of the

New York directors alone, this road was sold to the Atchison Company at a profit of something over $100,000. To hold that a director could make a contract with his co-directors by which the gross profits on a transaction of that kind, and all transactions of a like nature, should be divided in the proportion in which it is claimed that this contract provides for, seems to me would be unreasonable and ought not to be sustained.

In regard to the claim of the plaintiff on the count on an account annexed, I am also of opinion that there is no evidence in the case upon which this count can be sustained. Mr. Hubbard very fairly states that what he did was done under the contract. This count is for commissions on this particular transaction. Mr. Hubbard was not a broker; he does not claim to have acted in any sense as a broker between the parties, under any contract that he was to receive a commission for his services; and, to hold that for the services which he rendered in this case he is entitled to recover any compensation, under the circumstances, seems to me to be altogether out of the question. He was not a broker; there was no express contract, and there are no circumstances from which it can be concluded that any kind of an implied contract existed between the Investment Company and the plaintiff by which he was to have a commission on this transaction.

I am of the opinion that the defendant is entitled to a verdict.

*Mr. Smith.* Your honor understands, of course, that we shall go up on that.

*Judge Nelson.* I understand that the plaintiff excepts to this ruling, and the exception will be allowed.

--------

The following decisions bear more or less upon the questions involved in the above case: *Blatchford* v. *Ross,* 5 Abb. Pr. (N. S.) 434; *Conro* v. *Port Henry Iron Co.* 12 Barb. 29; *Cumberland Coal Co.* v. *Sherman,* 30 Barb. 553; *Buffalo, etc., R. Co.* v. *Lampson,* 47 Barb. 533; *Morrison* v. *Ogdensburg & L. C. R. Co.* 52 Barb. 173: *Koehler* v. *Black R. F. I. Co.* 2 Black, 715; *Covington, etc., R. Co.* v. *Bowler,* 9 Bush, 469; *Alford* v. *Miller,* 32 Conn. 543; *Coons* v. *Tome,* 9 FED. REP. 532; *Stout* v. *Yeager* 13 FED. REP. 802; *Verplanck* v. *Merc. Ins. Co.* 1 Edw. Ch. 184; *Scott* v. *Depayter,* Id. 513; *Gray* v. *N. Y. & Virginia S. Co.* 3 Hun, 388; *Mayor of Griffin* v. *Inman,* 57 Ga. 370; *Bestor* v. *Wathen,* 60 Ill. 138; *Harts* v. *Brown,* 77 Ill. 226; *Paine* v. *Lake Erie & L. R. Co.* 31 Ind. 283; *Port* v. *Russell* 36 Ind. 60; *First Nat. Bank* v. *Gifford,* 47 Iowa, 575; *Cumberland Coal Co.* v. *Parish,* 42 Md. 598; *European & N. A. R. Co.* v. *Poor,* 50 Me. 277; *Redmond* v. *Dickerson,* 9 N. J. Eq. 515; *Goodman* v. *Butler,* 30 N. J. Eq. 702; *Stewart* v. *Lehigh V. R. Co.* 38 N. J. Law, 505; *Claflin* v.

*Farmers' & C. Bank,* 25 N. Y. 293; *Butts* v. *Wood,* 37 N. Y. 317; *Ogden* v. *Murray,* 39 N. Y. 202; *Coleman* v. *Second Av. R. Co.* 38 N. Y. 201; *Hoyle* v. *Plattsburgh & M. R. Co.* 54 N. Y. 329; *Blake* v. *Buffalo C. R. Co.* 56 N. Y. 485; *U. S. Rolling Stock Co.* v. *Atlantic & G. W. R. Co.* 34 Ohio St. 450; *Robinson* v. *Smith,* 3 Paige, 222; *McAleer* v. *Murray,* 58 Pa. St. 126; *West St. L. Sav. Bank* v. *Shawnee Co. Bank,* 95 U. S. 557; *Stark Bank* v. *U. S. Pottery Co.* 34 Vt. 144; *Cook* v. *Berlin Wool M. Co.* 43 Wis. 433.—[ED.