EDWARD J. KELSEY AND OTHERS, RESPONDENTS, *v.* JAMES SARGENT AND OTHERS, APPELLANTS.

*Corporation— action by a stockholder to prevent waste of its funds — when it need not be preceded by a demand upon the officers of the company to bring suit — power of the board of directors — when they cannot terminate a contract, terminable at the election of the company — they cannot fix their own salaries.*

In an action brought by certain stockholders of a corporation to set aside as fraudulent notes given by the corporation, and a judgment entered thereon, and an order appointing a receiver of the corporation, it is not necessary to show that the plaintiffs have first demanded of the officers of the company that

they should bring the action, when it appears that the parties charged with the misconduct included the president, secretary, treasurer and a director of the corporation, and that the relief sought was the vacating of claims made by and allowed to themselves by the directors.

Prior to an annual election held in 1883 the company had entered into a contract with one Sargent, by which, in consideration of the transfer to him of 300 shares of the capital stock of the company, he agreed to pay into and furnish the company with $5,000 in cash and, at his own expense, to construct and furnish apparatuses for those desiring the same for which he was to receive the royalties collected thereon for one year.

The contract also provided that in case the company should choose to consolidate with any other company, it should have the right to terminate the agreement, at any time, by reimbursing Sargent for his expenses incurred in placing the apparatus, relieving him from all guarantees outstanding and paying him the sum of $5,000. After the election, at which the defendants were chosen directors, and the said Sargent was made president, a resolution was passed terminating the agreement, Sargent receiving a promissory note of the company for $6,252.12, $1,252.12 of which was for the disbursements made by him under the contract, and $5,000 of which was for the sum which the company had agreed to pay in case it should decide to consolidate with another company and terminate the agreement.

*Held*, that in the absence of any authority conferred upon them by a meeting of the stockholders, authorizing a consolidation of the company with some other company, the directors had no authority to terminate the contract or give the company's note to Sargent.

The day after the election of the directors a meeting was held at which five directors were present. The defendant Sargent was elected president and treasurer, and the defendant Puffer secretary. On motion of the defendant Markham, a salary of $5,000 per annum was unanimously voted the president, and on motion of one Pfaudler, a salary of $3,000 was voted to the secretary.

*Held*, that as it appeared that the officers who were to receive the salaries took part in the proceeding, the action of the board was invalid.

*It seems*, that a board of directors cannot, in the absence of express authority so to do, fix the salaries to be paid to members of the board while acting as officers of the company.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee in Monroe county.

*J. & O. Van Voorhis*, for the appellants.

*Theodore Bacon*, for the respondents.

HAIGHT, J.:

This action was brought by the plaintiffs, as stockholders of the Pfaudler Process Fermentation Company, to set aside and vacate

a promissory note for $17,499.49, purporting to have been executed by the vice-president and secretary of the company, payable to the order of James Sargent, the president; and also another note purporting to be executed by the president and treasurer and vice-president of the company for $3,383.17, payable to the order of the defendant Charles C. Puffer and the judgment entered thereon, the order appointing a receiver of the corporation and of all subsequent orders and proceedings in the action.

It is contended that no demand was made by the plaintiffs before this action was brought, that the officers of the company bring a suit to set aside the notes and judgments entered thereon. Assuming, for the sake of the argument, that the rule is that such a demand must be made as a condition precedent to the right of a stockholder to bring and maintain the action, or in lieu thereof that they have exhausted all means within their reach to obtain redress of their grievances, and that under the circumstances of the case the demand would have been of no avail; even then we are of the opinion that the plaintiffs may properly maintain the action. True, it does not appear that any express demand was made that the officers of the company should bring the action. It, however, appears from the evidence that the plaintiff Kelsey had, on several occasions, asked of the defendant Sargent and others, officers of the company, for information in reference to the conditions and transactions of the company, and had been refused such information; that when it was proposed to issue the bonds of the company for the purpose of raising funds to pay and discharge the alleged indebtedness for which these notes were given, he protested against such issue and immediately after hearing that the notes in question had been given, he went to the Traders' National Bank and warned the cashier against discounting the notes, advising him that he should contest the payment thereof. It was alleged in the complaint that the defendants Sargent, Puffer, Markham, the Traders' National Bank, Matthews and Hawley confederated and conspired together to defraud the company out of its property, and to defraud the plaintiffs out of their interest therein; that the board of trustees, with the exception of the defendant Pfaudler, was wholly under the control of the defendants Sargent and Puffer; that it was impossible to procure any action of the company for maintaining its rights, or

those of its stockholders, against the fraudulent devices of its officers, and that the plaintiffs, as stockholders, were without remedy, except by the interposition of this court upon their complaint. The conspiracy charged is, that the defendant Sargent, as president and treasurer, Puffer as secretary, Markham as director, and others, conspired together to defraud, etc. It was the action of these officers that the plaintiffs complain of. The notes were given to these officers. The demand that action be brought would necessarily have to be made to these officers. The action, if brought by them, would have been to set aside their own claims. Under these circumstances we are of the opinion that the plaintiffs were excused from making the formal demand, and that they had exhausted all the means within their reach to obtain redress before bringing the action within the rule as above stated.

In the case of *Fisher* v. *Andrews* (37 Hun, 176), a similar question was considered by this court, and it was then held that it was necessary that the stockholder should first request the receiver to prosecute the action ; but if it was made to appear that the receiver was in league with the other defendants, or had been guilty with them in misappropriating the funds of the company, that that would be received as a sufficient excuse for not applying to him to prosecute the action.

In the case of *Brinckerhoff* v. *Bostwick* (88 N. Y., 52), it was held that in case the receiver of the company was one of the directors chargeable with neglect of duty, the action may be maintained by the stockholders, and that it was not necessary to allege in the complaint, in such an action, a demand upon him and a refusal of the receiver to sue. (See, also, *Hawes* v. *Oakland*, 104 U. S., 450.)

As we have shown, the charge of misconduct was against the president, treasurer, secretary and directors of the company, and under such circumstances it would appear that formal demand was not necessary.

The next question which it becomes necessary to determine is, whether or not the notes given to the defendants Sargent and Puffer were fraudulent. At the time of giving the notes the company was managed by five directors, James Sargent, Charles C. Puffer, John M. Pfaudler, William G. Markham and Robert S. Wilson.

Prior to the annual meeting of 1883, at which these individuals were elected directors, the company had entered into a contract with the defendant James Sargent, by which, in consideration of the transfer to him of 300 shares of the capital stock of the company, he should pay into and furnish the company with $5,000 in cash, and should, at his own expense, construct and furnish apparatuses for those desiring the same, for which he was to receive the royalties collected thereon for one year. This contract, among other things, provided that in case the company shall choose to consolidate with the "New Process Company," or any other, that it shall have the right to terminate the agreement at any time by reimbursing the defendant Sargent his expenses in placing the apparatus, relieving him from all guarantees outstanding and paying him the sum of $5,000. Shortly after the election of the board of directors in 1883, they passed a resolution terminating this agreement with Sargent, giving him a promissory note for $6,252.12, $1,252.12 of which was for the disbursements incurred by him in furnishing and putting up apparatuses under the contract, and the other $5,000 was the sum which the company had agreed to pay him in case the contract should be terminated by the company for the purpose of consolidating with "The New Process Company" or any other company. It will be thus observed that the defendant Sargent in effect obtains $5,000 for surrendering the contract. The relation between directors of a corporation and its stockholders is that of trustees and *cestui que trusts*. As directors they are authorized to manage and conduct the business of the company, to audit and pay its debts and make such contracts as are within the ordinary scope and business of the corporation. They, however, are not authorized to vote away the funds of the stockholders upon claims known by them to be fictitious or unfounded, for such would be a breach of their trust. They have not the power, as directors, to mortgage or consolidate the company with any other company, or to compel the stockholders to surrender up the stock owned by them or to accept stock in another company. This power exists only in the stockholders. (*Blatchford* v. *Ross*, 54 Barb., 42.)

At the time that this contract was rescinded it does not appear that any meeting of the stockholders had been called, or that their consent had been obtained to such rescission, or that they had

consented as such to consolidate with any other company. The conditions upon which the $5,000 was to be paid had not therefore happened, and we do not understand that the directors had power to allow or pay it until the defendant Sargent had the right to demand the same under the provisions of his contract.

Again, it appears that the day after the election of the board of directors, in 1883, a meeting was held at which the five directors elected were present. The defendant Sargent was elected president and treasurer. The defendant Puffer was elected secretary. On motion of the defendant Markham a salary of $5,000 per annum was unanimously voted the president, and on motion of Pfaudler a salary of $3,000 per annum was voted Puffer. It further appeared that at this time the company had no income of any amount; that it was just beginning operations, and that it was in want of funds for a working capital. The question is thus sharply presented as to whether or not the directors of a corporation have the power to bind the stockholders to pay such salaries as they by resolution see fit to vote themselves. We are aware that salaries have in some instances been paid officers in corporations of this character, and that such salaries have been fixed by resolution of the board of directors. We are, however, inclined to question the propriety of so fixing the salaries. In the case under consideration the president, secretary and treasurer are designated from the board of directors. The board of directors are only five in number. If the power of fixing their own compensation is left with the board, it will readily be seen that the stockholders may be prejudiced; that the directors may arrange with each other and substantially fix their own salaries. There appears to be nothing in the statute, or in the certificate of incorporation under which this corporation was organized, bearing upon the question, and the authorities upon the question appear to be exceedingly meager.

In the case of *Coleman* v. *Second Avenue Railroad Company* (38 N. Y., 201), the general rule was stated to the effect that directors, acting as directors and composing a majority of the board, could not make a bargain with themselves binding upon the company.

In the case of *Ogden* v. *Murray* (39 N. Y., 202), it was held that trustees and persons standing in similar fiduciary relations shall not be permitted to exercise their powers and manage or appropriate

the property of which they have control for their own profit or emolument, and that they shall not take advantage of their situation to obtain any personal benefit to themselves at the expense of their *cestui que trusts.*

In the case of the *Maux Ferry Gravel Road Company* v. *Branegan* (40 Ind., 361), it was held that if there is no provision made in the law under which a corporation is organized, or in its by-laws by which compensation is to be made to the directors for services, compensation cannot be recovered, and in the absence of such provision the making of an allowance by the board of directors to themselves and the issuing of an order or bond as a compensation for services was invalid.

In the case of *Holder* v. *The La Fayette, Bloomington and Mississippi Railroad Company* (71 Ill., 106), it was held that where a director of a company is appointed treasurer and no provision at the time is made for his compensation, he will have no right to claim pay for the same, and a subsequent allowance of a claim in his favor will not entitle him to receive it; that the directors in respect to the corporate funds are trustees and have no right to use or appropriate the funds of their *cestui que trusts* to themselves.

In the case of *Jackson* v. *The New York Central Railroad Company* (2 Thomp. & Cook, 653), it was held that a director of a railroad company is not entitled to compensation for his legitimate and ordinary duties as director, but is for his personal services beyond the ordinary range of his official duties upon an actual employment by the company.

Pierce on Railroads (page 31) says that " the directors are presumed to perform the duties of their trust gratuitously ; they are not entitled to compensation even for services outside of the ordinary duties of their offices unless it is expressly stipulated before the services are rendered ; but an express contract by the board to pay a fixed or reasonable sum is binding. Some authorities require a vote or resolution as evidence of the agreement, while others do not regard such formal action as essential where there is an actual employment. A subsequent vote of the board to pay a director for his services, where there was no previous agreement, is not binding. The expectation of a director, that he was to receive compensation,

there being no previous vote or promise, does not entitle him to it. The rule which excludes compensation applies to the president, chosen by the directors from their own number, and also to a treasurer, when a director, but not to officers and agents not being directors, who are entitled to recover on a *quantum meruit* where no price is fixed." (See, also, *Butts* v. *Wood*, 37 N. Y., 317.)

There are other authorities which appear to assume that the board of directors have the right to vote salaries, but in none to which our attention has been called does it appear that the question of their power so to do was raised or discussed. Without stopping to determine the question as to whether or not the board of directors have the power, by resolution, to vote salaries to one or more of their own body, we are clearly of the opinion that such salaries so voted are not binding upon the company, when the director in whose favor the salary is voted is present participating in the proceeding.

In the case under consideration the five directors were present. The motion was carried unanimously. The inference to be drawn from the proceeding is that they all participated. We are consequently of the opinion that, under the circumstances of this case, the salaries voted ought not to be upheld. The amount of these salaries, together with the $5,000 embraced in the $6,252.12 note, entered into and formed a part consideration of the notes sought to be set aside. The referee has not in terms found that there was a fraudulent conspiracy on the part of the directors to swell the indebtedness of the company in favor of its officers, so that the corporate franchises might be sold out for their benefit; but he has found facts which, if true, would be sufficient to establish the existence of such fraudulent conspiracy. This is sufficient. (*Whittlesey* v. *Delaney*, 73 N. Y., 511.)

The facts found by the referee appear to be sustained by the evidence. We have not discovered any exception taken upon the trial which necessitates a reversal of the judgment. The judgment entered in this action, among other things, provides that "any party may apply upon the foot of this judgment for a reference to ascertain and report what damages, if any, the said company, or any of its stockholders, parties to this action, have sustained by reason of the action of any of the defendants, trustees of such company; and if desired by said defendants, what amount was due

to them, or either of them, from said company on the 5th day of December, 1883, to the end that such further judgment may be entered as shall be just."

The issues joined in this action were referred to the referee to hear, try and determine. The plaintiffs have failed to prove that they have sustained any damages beyond the relief given in the judgment. The referee consequently was not authorized to find or award damages. This is the only issue raised by the pleadings, which the referee was called upon to try, that remains undetermined. If the plaintiffs claimed that they were entitled to damages the evidence should have been produced before the referee. Failing in that they should not recover.

The judgment should be modified by striking out so much of the judgment as is above quoted, and as so modified the judgment should be affirmed, with costs of this appeal to the respondents.

BARKER and BRADLEY, JJ., concurred; SMITH, P. J., not sitting.

Judgment modified by striking out the following: " Any party may apply upon the foot of this judgment for a reference to ascertain and report what damages, if any, the said company or any of its stockholders, parties to this action, have sustained by reason of the action of any of the defendants, trustees of such company, and if desired by said defendants, what amount was due to them, or either of them, from said company on the 5th day of December, 1883, to the end that such further judgment may be entered as shall be just." And as so modified the judgment is affirmed, with costs of this appeal to the respondents.