## BURKE v. LINCOLN–VALENTINE CO.

(Supreme Court, Appellate Term.   June 28, 1899.)

CORPORATIONS—CONTRACTS OF INCORPORATORS—ADOPTION BY CORPORATION.

Plaintiff, who was employed for a year by a partnership which intended to incorporate, was assured by the firm that the contract would be binding on the corporation.   After incorporation, plaintiff was told by the president that his contract was "all right," and that nothing further was necessary to make it valid.   A reduction in plaintiff's salary was made, under the terms of the contract, and plaintiff paid to the corporation amounts which he had overdrawn.   *Held*, that plaintiff, who was discharged by the corporation before the expiration of the year, could recover of the corporation for breach of contract, as the corporation adopted the agreement as its own.

Appeal from municipal court, borough of Manhattan, Eleventh district.

Action by Oswald N. Burke against the Lincoln-Valentine Company.   From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

William H. Blain, for appellant.
Sumner B. Stiles, for respondent.

LEVENTRITT, J.   On November 30, 1896, the plaintiff made a contract with a co-partnership doing business under the name of the Lincoln-Valentine Company, which was subsequently incorporated under the same name.   This action is brought against that corporation to recover damages for breach of the contract.   It appears that three persons (one A. Lincoln Clark, Robert Valentine Matthews, and Robert Van Iderstine) contemplated associating themselves for the purpose of conducting a mercantile reporting and collection agency.   They were desirous of securing the services of the plaintiff, who had considerable experience in that particular line of business.   From the first it was intended to organize a corporation, and the plaintiff was apprised of that fact.   Two weeks prior to the commencement of business operations, at an interview between the plaintiff and Clark, Matthews, and Van Iderstine, the conditions of the employment were discussed.   Clark, who was the prime mover and master spirit in the undertaking, arranged the terms.   The plaintiff inquired whether incorporation had already been effected, and upon being informed that it had not, but was about to be, asked what authority existed to bind the prospective incorporators.   According to the testimony of Van Iderstine and of the plaintiff, all three assured him that the contract would hold after the incorporation of the company, as the management would be solely in their hands.   Thereupon the following contract was drawn and signed by Van Iderstine, upon the direction and dictation of Clark:

"November 30th, '96.

"O. N. Burke to be employed for the period of one year at a guarantied salary of twelve hundred dollars.   For the first three months, however, he shall receive $30 per week.   But if during that time 25 subscriptions have not been

secured, the sum of $60 to be refunded during the year. A provision for an increase in salary upon a sliding scale to be hereafter agreed upon.

"The Lincoln-Valentine Company."

Two weeks later the plaintiff entered upon his employment. The incorporation did not take place till February 25, 1897, and during the intervening months the business was carried on as a co-partnership, under the name which the corporation subsequently adopted. The services rendered by the plaintiff consisted in outlining and perfecting a system for conducting the agency, preparing and editing the printed matter required in the organization and prosecution of the business, in compiling the material for a rating book, in drafting the subscription contract with business houses, and in devising the general scheme of books and files. During the existence of the co-partnership the management of the business was intrusted entirely to Clark. The salary of the plaintiff and of the other employés was paid by one Edward Gillmor, the cashier of the firm. Just prior to the incorporation, Van Iderstine withdrew; leaving, of those originally interested, A. Lincoln Clark and Robert Valentine Matthews. It is to be noted that the name adopted both by the firm and the subsequent corporation was constructed of the middle names of Clark and Matthews. When matters were ripe, and it was finally decided to incorporate, the legal absorption of the partnership by the corporation—barring the formal act of filing the certificate—was unattended by any change in fact or in appearance. The certificate of incorporation was executed by Clark, and thereupon, in order to satisfy the statutory provisions requiring three incorporators, the signatures of the plaintiff and Gillmor were procured. It is conceded that the plaintiff was made nominally a stockholder that he might be used as an incorporator. Clark remained the controlling spirit of the corporation; he became its president; and he and Matthews associated with themselves, on the board of directors, three members of the Clark family, residents of Elizabeth, N. J. There was absolutely no change in the methods of conducting business. The name remained the Lincoln-Valentine Company. The same premises were occupied, and there was no change in the number or arrangement of the offices. The same sign was displayed. The stationery printed when business was begun in December, 1896, was continued in use. No new set of books was opened at the time of incorporation, and the method of bookkeeping remained practically the same. The same employés were retained, and they discharged their former duties, while those devolving on the plaintiff, which have been enumerated in detail, underwent no change, further than, in so far as they had been completed, their results were adopted and utilized by the corporation. Gillmor, as theretofore, was the paymaster. The Lincoln-Valentine Company, the corporation, took to itself and carried out collections which had been intrusted to the Lincoln-Valentine Company, the partnership. On the whole record, two conclusions are brought home with convincing force. The first is that there was identity of partnership and corporation; the second, that Clark was each and both. It was he who, through Gillmor, always paid the plaintiff, either in cash or by his individual check,—never by that of

the Lincoln-Valentine Company,—and the receipts for the salary, as a rule, ran to him personally. The plaintiff continued in the employ of the defendant until October 2, 1897, when he was discharged; the defendant claiming that the contract made in November, 1896, before the incorporation, was not binding on the company. The plaintiff, on the other hand, insists that this is the defendant's contract, that it was binding as originally made, and that it was adopted and recognized by the defendant. In this he is borne out by the acts of the corporation, and the declarations of Clark, its president. It will be observed that during the first three months the plaintiff was to receive $30 a week under his contract, and that, unless 25 subscriptions should be secured within that time, the plaintiff should refund $60 during the course of the year. Exactly three months after the plaintiff had entered on his employment (that is, one month after the defendant had been incorporated), it reduced the plaintiff's salary, conformably to the contract, to $25 per week. It is true, Clark seeks to avoid the effect of this reduction upon the theory that this amount was then fixed inasmuch as there was no contract, and because it became necessary to fix the plaintiff's salary at some figure pending final determination as to its amount by the board of directors. But, in view of the fact that the date of this "fixing" coincided with the date of reduction provided for by the contract, we think the court was justified in finding that this betokened a recognition and adoption of the contract, and that the defendant availed itself of its provisions, and elected to hold the plaintiff to its terms. Another pregnant fact in this connection is that just prior to the reduction the defendant, through Clark, called for and obtained the original of the contract, that it might verify its terms. It is also significant that in May, 1897, a further reduction in the plaintiff's salary was made, in apparent conformity with the contract, so that the total salary he should receive during the year should not exceed the stipulated guaranty of $1,200. If these reductions were in recognition of the contract,—and we accept the justice's finding that they were,—it would be grossly inequitable to permit the corporation to enforce repayment of, and to receive into its treasury, the excessive payments made under a contract with the partnership, and at the same time disavow the agreement which provided for them. The force of these various acts of the corporation is strengthened by the declarations of Clark, as testified to by the plaintiff and accepted by the justice. Clark repeatedly assured the plaintiff, after the defendant had been incorporated, that his contract was "all right," and that it was unnecessary to take any steps to insure its validity. Clark denies this, but the very resolution which he read in evidence as having been passed by the board of directors, "Motion to have the salary of Burke and Salmon, and contracts with them, referred to president and treasurer, and to report at the next meeting," indicates a recognition of the contract, and that the reductions were made according to it. Much stress is laid on the admission of the plaintiff, on cross-examination, that: "There was nothing said at all about my contract. That was too well understood." And it is urged that this statement is destructive of any theory of

ratification. Even were we to ignore the plaintiff's other testimony on this subject, the acts speak so loudly of recognition that it required no words. That admission, as disclosed by a careful examination of the record, had reference, apparently, to a single interview; and is thus not in conflict with his narration of the occurrences at frequent other interviews, at which Clark emphatically assured him that the contract would be carried out. On the whole case, we think that we should be subscribing to an injustice, were we to deny recovery to the plaintiff.

In its important features, this case is analogous to that of Hall v. Herter, 83 Hun, 19, 31 N. Y. Supp. 692. There, as here, a corporation succeeded a co-partnership of the same name; there, to a similar extent as here, the parties interested, and the nature and methods of conducting the business, were substantially identical before and after incorporation. In reversing a dismissal of the complaint, the court held that, under the circumstances of the case, a contract made with the co-partnership was enforceable against the corporation, as there was evidence of intention on the part of both parties that the contract should be assumed. No formal resolution or vote was required to make it a binding obligation. Mr. Justice Parker says:

"While a corporation is not bound by the engagements made on its behalf by its promoters before its organization, it may, after it is organized, make such engagements its contracts, by adopting them as its own. Less evidence tending to show adoption will be required to establish it where the officers were also the promoters, than where the officers and promoters were different persons."

After a retrial, resulting in a verdict for the plaintiff, an appeal was taken to the general term, and thence, after affirmance, to the court of appeals, where a final affirmance was had (Hall v. Herter, 157 N. Y. 694, 51 N. E. 1091); the court adopting the opinion of Mr. Justice Van Brunt at the general term. The same questions were involved on the retrial, and Mr. Justice Van Brunt, in announcing the decision of the court, observes that:

"If a contrary rule were adopted, these corporations would be mere traps for the purpose of deceiving the unwary, and be the means of using the charters conferred by the state as an instrument of fraud." Hall v. Herter, 90 Hun, 280, 35 N. Y. Supp. 769.

The judgment must be affirmed.

Judgment affirmed, with costs to the respondent. All concur.